UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.I., <br><br> Petitioner, <br><br> v. <br><br> LAURA HERMOSILLO, et al., <br><br> Respondents. | CASE NO. 2:26-cv-00592-BAT <br><br> **ORDER GRANTING PETITION FOR HABEAS CORPUS, DIRECTING RELEASE, AND GRANTING MOTION TO PROCEED UNDER PSEUDONYM** |

Petitioner, a detainee of the Northwest Immigration and Customs Enforcement Processing Center (NWIPC), requests the Court grant 28 U.S.C. § 2241 habeas relief and order Respondents to (1) immediately release him from immigration detention and return his personal property; (2) require Respondents to provide notice and a hearing if they seek to re-detain him during his removal proceedings; (3) declare detaining Petitioner without an individualized determination before a neutral decisionmaker violates due process; and (4) pay attorney fees and costs. The Court **GRANTS** the petition for the following reasons.

## BACKGROUND

Petitioner is a citizen of Ethiopia who entered the United States on November 26, 2024. Petition (Dkt. 1) at ¶ 21. He fled Ethiopia due to political persecution by the government; he was

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 1

harmed by security forces as a result of his involvement in a peaceful protest. Petitioner Decl. (Dkt. 1-1) at ¶ 3. On December 1, 2024, he claimed fear of being returned to Ethiopia and was referred to United States Citizenship and Immigration Services (USCIS) for a credible fear interview. Petition (Dkt. 1) at ¶ 22; Return (Dkt. 8) at 3. USCIS was unable to complete the interview because USCIS did not have an interpreter for Petitioner's best language. Return (Dkt. 8) at 3.

Petitioner was paroled under 8 U.S.C. § 1182(d)(5), discretionary parole for "urgent humanitarian reasons or significant public benefit," in December 2024.[1] Petition at ¶ 22. His parole was valid for a year, until December 2025. *Id.* Petitioner was enrolled in the Intensive Supervision Appearance Program (ISAP), which imposed certain conditions of parole. *Id.* The declaration of ICE officer Gabriel Arambula states Petitioner failed to be present for a scheduled home visit on March 15, 2025 and missed 7 biometric check-ins between March and July 2025. Return (Dkt. 8) at 4; Arambula Decl. (Dkt. 10) at ¶ 14. While released, Petitioner volunteered at his mosque, took in-home health care classes and CPR training, and volunteered for a community youth soccer tournament. Petition (Dkt. 1) at ¶ 26.

On July 3, 2025, Petitioner reported in person to the ISAP office in Tukwila, Washington,

---

[1] 8 U.S.C. § 1182(d)(5)(A) provides:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 2

where the Department of Homeland Security (DHS) arrested and re-detained him, without notice or a hearing, on the grounds that he had not been following ISAP requirements. Petitioner Decl. (Dkt. 1-1) at ¶ 6; Petition (Dkt. 1) at ¶¶ 27, 30, 32. He has no criminal history. *Id.* at ¶ 29. He has been detained at NWIPC since then.

Petitioner's request for bond was denied on August 20, 2025. Return (Dkt. 8) at 4–5. His asylum application was denied on December 17, 2025, and the appeal remains pending. *Id.* Petitioner filed this petition for habeas corpus under 28 U.S.C. § 2241 on February 19, 2026, seeking his immediate release on the sole ground that his re-detention without written notice and a pre-deprivation hearing violated his Fifth Amendment right to due process. Dkt. 1 at 11.

**DISCUSSION**

The Court has authority to grant habeas relief if Petitioner demonstrates his custody violates the Constitution, laws, or treaties of the United States under 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of proving by a preponderance of the evidence his detention is contrary to law. *Parke v. Raley*, 506 U.S. 20, 31 (1992). Under 28 U.S.C. § 2241, federal courts have jurisdiction over challenges to the detention of noncitizens before removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court has jurisdiction over this petition for habeas corpus, as it does not challenge Petitioner's order of removal but his detention and the process used to detain him. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1005 (W.D. Wash. 2019).

**I.    Applicability of Due Process Clause**

The parties agree Petitioner is an applicant for admission who is subject to mandatory detention without a bond hearing pursuant to 8 U.S.C. § 1225(b)(1), because he arrived at the border, was placed in removal proceedings, and was released on humanitarian parole. Return

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 3

(Dkt. 8) at 5; Traverse (Dkt. 11) at 2.

Petitioner's mandatory detention under § 1225 does not eliminate his liberty interest. The Due Process Clause applies regardless of whether the noncitizen's presence is lawful, unlawful, temporary, permanent and regardless of whether detention falls under § 1225 or § 1226. *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. Nov. 25, 2025) (mandatory detention under § 1225(b) despite noncitizens' due process rights and with no consideration of their deep financial, community, and familial ties in the country raises constitutional issues); *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) ("This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*.") (collecting cases and citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

Respondents do not dispute that Petitioner retains a liberty interest. *See* Return (Dkt. 8) at 7. Rather, they argue that, notwithstanding Petitioner's liberty interest, his release on humanitarian grounds was discretionary and revocable, and his parole violations provided ICE with an objective basis to re-detain him without notice and a hearing. *Id.*

## II.    Due Process Claim

The Court evaluates Petitioner's due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which the parties agree applies. The Court assesses (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguard" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 4

424 U.S. 319 at 335.

First, as noted above, Petitioner has considerable private interest in his freedom. His interest in not being detained "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner built a life in the United States and connected with a religious community in the 7 months he has lived in Washington. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 at 1136. That liberty interest exists regardless of ICE's initial discretion to release him. *Id.* (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); *see Doe v. Becerra*, 787 F. Supp. 3rd 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.") Respondents do not argue otherwise, but claim Petitioner's parole violations diminish the interest, which is better discussed as part of the next factor.

The Court next considers the risk of erroneous deprivation of Petitioner's liberty interest. Regulations require ICE to provide written notice upon terminating parole before the expiration of the one-year parole period. Specifically, 8 C.F.R. § 212.5(e)(2)(i) provides:

> ***On notice.*** In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 5

parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

The regulation applies to Petitioner, as he was re-detained before his parole automatically expired. Respondents do not dispute that ICE did not provide written notice to Petitioner of revocation of his parole in the form of a charging document or otherwise. Petition (Dkt. 1) at ¶ 28. The record also does not reflect any finding by the government that (1) "the purpose for which parole was authorized" has been accomplished, or (2) "neither humanitarian reasons nor public benefit warrants" Petitioner's presence in the United States. *Id.* Thus, the government failed to follow its own regulations, which it is not free to disregard. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

Respondents argue Petitioner's parole violations show that providing him with notice would have been impracticable or motivated his flight.[2] Return (Dkt. 8) at 8. On these facts, the Court disagrees. Regulations provide that, to parole Petitioner in the first place, DHS necessarily found that he "present[ed] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). During the 7 months after that determination was made, Petitioner missed 7 biometric check-ins and one scheduled home visit. Return (Dkt. 8) at 4. He identified three reasons for these violations. First, he prayed at the mosque five times a day and was not allowed to bring his phone into the mosque, and if he missed a call while praying, he could not call back as there was no callback number. Petitioner Decl. (Dkt. 1-1) at ¶ 5. Second, ICE had no interpreters in his language of Oromo, only a language in which he is not fluent (Amharic), which he believed

---

[2] On this point, Respondents' citation to *Martinez Hernandez v. Andrews*, 2025 WL 2495767 (E.D. Cal. Aug. 27, 2025), is unhelpful to them: the petitioner in that case had a criminal history, unlike Petitioner here, and even with that history the court nevertheless found his due process rights had been violated.

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 6

made it harder to explain issues and understand what they wanted. *Id.* Third, his phone broke and he went to ISAP and spoke to a specialist, who indicated it was not a problem, but he later learned this specialist did not communicate the information to his assigned case specialist. *Id.*

The Court finds these explanations for the alleged missed check-ins credible. Petitioner has no criminal history either in this country or abroad. Petition (Dkt. 1) at ¶ 29. For the duration of his release, it appears he stayed local and prayed regularly at his mosque, and he volunteered at the mosque and a community youth soccer tournament. *Id.* at ¶ 26. He made demonstrable efforts to comply with parole conditions, appearing voluntarily for appointments including the one at which he was re-detained on July 3, 2025, and visiting DHS when his phone broke. This record does not paint the picture of a noncitizen who is likely to flee, or who would have been so likely to flee upon receipt of written notice that the government was justified in disregarding its regulation requiring written notice prior to revocation of parole. The record certainly does not show Petitioner presents any danger to the community that would justify civil detention while removal proceedings are still under way and no final order is in effect. The Court thus finds the risk of erroneous deprivation of Petitioner's liberty interest is high.

Lastly, Respondents' interest in continued civil detention is low. While the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), the public interest in civil detention without notice or a hearing is not high on these facts, where Petitioner has no criminal history and has not absconded. Compared to Petitioner's liberty interest, Respondents' interest in re-detaining him without procedural safeguards in violation of its regulations is low. The third factor weighs in favor of Petitioner.

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 7

### III.   Remedy

Based upon the *Mathews* factors, Petitioner has a protected liberty interest in release from custody, and due process requires he be released on humanitarian parole just as he was released and permitted to enter the county in December 2024. Due process requires Petitioner be provided a hearing with proper notice before he can be re-detained, and such relief is within the Court's authority to grant on a petition for habeas corpus. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243. Respondents argue Petitioner's re-detention is no more than a "mere possibility," Return (Dkt. 8) at 9–10, but numerous courts to date have considered petitioners' re-detention likely enough to merit injunctive relief under similar circumstances. *See Ramirez Tesara*, 800 F.Supp.3d 1130 at 1139; *Y.M.M. v. Wamsley*, No. 2:25-cv-02075, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025). The Court further finds it appropriate, given the violation of Petitioner's due process rights and the risk of erroneous deprivation of his liberty, to require the government to bear the burden of proving its entitlement to re-detain Petitioner at such a hearing by a standard of clear and convincing evidence.

### CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

1.      The petition for writ of habeas corpus is **GRANTED**. Dkt. 1.

2.      Respondents shall **RELEASE** Petitioner within 24 hours of entry of this order; return to him any personal property upon release, including personal identification documents

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 8

(other than a passport) and employment authorization documents; and file a status report certifying he has been released within 48 hours of entry of this order.

3.      Respondents are **PROHIBITED** from re-detaining Petitioner without adequate notice of intent to re-detain him and the grounds for re-detention, as well as a hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

4.      Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act within the time required by statute.

5.      Petitioner's unopposed Motion to Proceed Under Pseudonym, Dkt. 7, is **GRANTED**. Petitioner states he fled Ethiopia because of persecution by the government due to his involvement in peaceful protest and he fears he will be detained, tortured, and killed if returned. Petitioner Decl. (Dkt. 1-1) at ¶ 3. Public disclosure of Petitioner's identity could expose him to risk of injury or death. There is no prejudice to Respondents because Petitioner's identity has been disclosed to them, and the prejudice to the public interest is minimal. Thus, the Court finds Petitioner's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

DATED this 18th day of March, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING PETITION FOR
HABEAS CORPUS, DIRECTING RELEASE,
AND GRANTING MOTION TO PROCEED
UNDER PSEUDONYM - 9